# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

GARY LEE EMORY,

      Petitioner,

v.                  No.   3:25-CV-361-DCLC-JEM

BRANDON WATWOOD,

      Respondent.

## MEMORANDUM & ORDER

Petitioner, a state prisoner, filed a pro se petition seeking habeas corpus relief under 28 U.S.C. § 2254 challenging his 2018 Knox County convictions for numerous charges [Doc. 1, p. 1]. These convictions arose out of an incident in which Petitioner, accompanied by a co-defendant, entered the apartment of the victim, who was in a wheelchair. During the encounter, the co-defendant pushed the victim from his wheelchair to the floor and took his money, while Petitioner stood over the victim with a hammer in one hand and an item identified as a gun by both the victim and a witness in the other. Petitioner and his co-defendant then left the apartment with the victim's money and other personal items. *State v. Hartshaw and Emory*, No. E2019-02200-CCA-R3-CD, 2021 WL 5861278, at *3 (Tenn. Crim. App. Dec. 10, 2021) ("*Hartshaw*").

In his § 2254 petition, Petitioner asserts claims for (1) a violation of the Double Jeopardy Clause; (2) a violation of his constitutional right against self-incrimination; and (3) a violation of due process under the Tennessee Constitution, based on allegedly defective jury instructions for two of his aggravated robbery charges that did not match the statutory elements of the crime under Tennessee law [Doc. 1, p. 1, 5–9].

Now before the Court is Respondent's motion to dismiss the petition, in which he asserts that Petitioner procedurally defaulted his first two claims for habeas corpus relief, and that Petitioner's third claim is for violation of state law and therefore not cognizable [Doc. 18]. In support of this motion, Respondent filed the state court record [Doc. 17] and a memorandum [Doc. 20]. Petitioner did not file a response to this motion, and his deadline has passed [Doc. 11, p. 1]. E.D. Tenn. L.R. 7.1(a). As such, Petitioner waived any opposition to the motion. E.D. Tenn. L.R. 7.2.

For the reasons below, the Court agrees with Respondent that (1) Petitioner procedurally defaulted his first and second claims for relief and (2) to the extent it seeks relief for a violation of state law, Petitioner's third claim for relief is not cognizable here. The Court further finds that even if Petitioner's third claim adequately asserts a violation of his due process rights under the United States Constitution, the record establishes Petitioner is not entitled to relief for that claim under § 2254. So Respondent's motion to dismiss the petition [Doc. 18] will be **GRANTED**, and this action will be **DISMISSED**.

## I. ANALYSIS

The Court will first address Petitioner's procedural default of his first and second claims for § 2254 relief before addressing his third claim for relief.

### A. Double Jeopardy and Self-Incrimination

Petitioner procedurally defaulted his claims alleging double jeopardy and violation of his right against self-incrimination by not presenting them to the Tennessee Court of Appeals ("TCCA"), and he has not presented cause and prejudice to excuse that procedural default. Thus, the Court will not address the merits of these claims.

Before a federal court may grant habeas corpus relief to a state prisoner, the petitioner must have exhausted his available state court remedies for the claim. 28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). For a petitioner to have exhausted a § 2254 claim, he must have presented "the same claim under the same theory" to the state courts. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (finding constitutional claim must be presented in federal court under the same theory as presented in state appellate process). In Tennessee, presentation of the claim to the Tennessee Court of Criminal Appeals satisfies the exhaustion requirement. Tenn. S. Ct. R. 39.

If a prisoner never presented a claim to the state courts and a state procedural rule now bars presentation of the claim, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991). In those cases, the claim is technically exhausted but procedurally defaulted because no state remedy remains available. *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Coleman*, 501 U.S. at 732; *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."). In Tennessee, petitioners may generally proceed only through one full round of the post-conviction process and must file it within one-year of the final judgment. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

On federal habeas review, the district court may review a procedurally defaulted claim only where the petitioner shows cause for that default and actual resulting prejudice, "or . . . that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50. Errors of post-conviction counsel cannot generally serve as "cause" to excuse a procedural default. *Coleman*, 501 U.S. at 753–53.

But the Supreme Court established an equitable exception to this rule in *Martinez v. Ryan*, holding that the ineffective assistance of post-conviction counsel or the absence of such counsel may establish cause to excuse the procedural default of a claim of ineffective assistance of trial counsel claim in some cases. *Martinez v. Ryan*, 566 U.S. 1, 9, 17 (2012). The Supreme Court described the *Martinez* exception as follows:

> [The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 13–14, 16–17). The *Martinez* exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014). But *Martinez* does not excuse a petitioner's failure to develop a factual record for a claim, even where he attributes that failure to the ineffective assistance of his post-conviction counsel. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1735 (May 23, 2022).

Petitioner did not present his claims for § 2254 relief alleging double jeopardy and violation of his right against self-incrimination in his direct appeal of his convictions [Doc. 17-13] or in his appeal of the denial of his post-conviction petition [Doc. 17-23]. As a result, Petitioner procedurally defaulted these claims.

4

And Petitioner has not shown cause or prejudice to excuse this default. The only allegations in the petition that the Court can liberally construe to seek to attempt to excuse this procedural default are Petitioner's statements that his direct appeal and post-conviction attorneys would not raise these double jeopardy and self-incrimination claims on his behalf [Doc. 2 p. 5–8]. But to the extent that Petitioner seeks to blame his appellate attorney for failing to raise these claims in his direct appeal, Petitioner likewise procedurally defaulted any claim for ineffective assistance of appellate counsel by not first exhausting that claim with the TCCA. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (providing that "an ineffective-assistance-of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). While Petitioner also seeks to fault his post-conviction counsel for not raising these claims, it is apparent from the totality of the petition that the double jeopardy and self-incrimination claims for which Petitioner seeks relief under § 2254 are freestanding claims, not claims for ineffective assistance of trial counsel. As such, the ineffective assistance of post-conviction counsel cannot excuse Petitioner's default of these claims under *Martinez*.

Accordingly, the Court will not address the merits of these claims, and Petitioner is not entitled to relief under § 2254 for these claims.

## B. Jury Instruction

Petitioner's third claim alleges that the jury instructions for two of the four aggravated robbery charges against him, specifically Counts 3 and 4, did not match Tenn. Code Ann. § 39-13-402(a)(1). He claims this violated his due process rights under the Tennessee constitution [Doc. 1, p. 8]. Petitioner's allegations regarding exhaustion of this claim are inconsistent. Petitioner first states that he did not exhaust his state court remedies for this claim because "the weapon that was alleged for Counts 3-4 was be[]ing changed every time we appealed from one Court to

5

another." [*Id.* at 9]. He then asserts, however, that he raised and exhausted this claim on both direct appeal and in his post-conviction proceedings. [*Id.*].

But as Respondent correctly contends in his response, this claim appears to assert a violation of state law, which is not cognizable under § 2254. *See* § 2254(a) (mandating that habeas corpus relief is only available where a state prisoner is held "in violation of the Constitution or laws or treaties of the United States"); *Estelle v. McGuire*, 502 U.S. 62, 68, 71–72 (1991) (providing that whether a jury instruction violated state law is generally not a proper subject for federal habeas review). As such, the claim is subject to dismissal on this ground.

Moreover, even if the Court could liberally construe Petitioner's third claim to assert a violation of his due process rights under the Constitution of the United States based on the assertion that the jury instructions for Counts 3 and 4 do not match the applicable statutory elements under Tennessee law, Petitioner did not raise a substantively similar claim to the TCCA in his direct appeal [Doc. 17-13] or in his post-conviction appeal [Doc. 17-23]. Thus, he also procedurally defaulted this claim, and he again has not shown cause or prejudice to overcome that default.

Additionally, even if the Court liberally construes the petition to allege that the jury instructions for Counts 3 and 4 violated Petitioner's constitutional rights in the same manner he alleged in his direct appeal,[1] the record shows that he is not entitled to habeas corpus relief for this claim. In his direct appeal, Petitioner alleged that the jury instructions for Counts 3 and 4 violated his right to a jury trial by not specifying that the deadly weapon was a gun, especially as he chose

---

[1] Even liberally construing the complaint in Petitioner's favor, it does not assert a claim for ineffective assistance of counsel based on the jury instructions, which was the only potentially relevant claim Petitioner raised in his post-conviction appeal [Doc. 17-23]. *See* Habeas Rule 2(c) (requiring petition "specify all grounds for relief" and "state the facts supporting each ground"); *see also Rogers v. Mays*, 69 F.4th 381, 398 (6th Cir. 2023) (finding that the petitioner "violated [Habeas Rule 2(c)] by devoting just one sentence to this claim in his amended habeas petition."). Thus, the Court will not address any such claim.

6

to testify with the understanding that the prosecution would only rely on a gun for this element [Doc. 17-13, p. 45–46]. Before addressing the merits of this issue, the Court will summarize the tortured history of this issue in the record, mainly by setting forth the relevant facts from the TCCA's opinion on Petitioner's direct appeal, as Petitioner does not contest those facts in his petition.

The indictment against Petitioner included "two counts of aggravated robbery with a deadly weapon (Counts 1 and 2)[] [and] two counts of aggravated robbery accomplished by display of an article fashioned to lead a victim to reasonably believe it to be a deadly weapon (Counts 3 and 4) . . . ." *Hartshaw*, 2021 WL 5861278, at *1. Before trial, Petitioner filed a motion for a bill of particulars seeking to establish "whether the State would include the hammer, 'allegedly stolen' during the robbery, as a deadly weapon (Counts 1 and 2) or 'fashioned or used as' a deadly weapon (Counts 3 and 4)." *Id.* (footnote omitted). At the hearing on that motion, the prosecution "confirmed that 'the deadly weapon is the handgun and not the hammer,'" and the trial court therefore "stated that a bill of particulars was not necessary because the hammer was not referred to in the indictment as the deadly weapon." *Id.*

Soon after that motion hearing, however, the prosecution sent defense counsel an email stating that, after listening to the preliminary hearing recordings, the prosecuting attorney determined "that the evidence showed that [Petitioner] was armed with a gun and a hammer during the robbery," and therefore "it [was] not the State's theory that the robbery was accomplished only with a gun" [Doc. 17-12, p. 77]; *Id.* at 2. The prosecution also stated that it did not believe it had to disclose its theory of the case in a bill of particulars, and that if defense counsel thought otherwise, the parties could discuss it on an upcoming date [*Id.*]. But it does not appear that any

7

party informed the trial court of this exchange, and it appears that the parties did not discuss the issue again until they discussed the jury instructions at Petitioner's trial. *Id.*

In the parties' initial discussions regarding jury instructions during Petitioner's trial, which occurred before Petitioner testified, Petitioner's counsel "requested an instruction that the 'deadly weapon' element of aggravated robbery be 'the gun' and not the hammer." *Id.* at *7. The prosecution then brought up the fact that it had emailed Petitioner's counsel regarding the hammer also being a deadly weapon, at which point the trial court recalled its pretrial ruling "that the hammer would not be considered the deadly weapon and that the State had elected that the deadly weapon would be the gun." *Id.* The prosecution then indicated that it would therefore dismiss Counts 3 and 4. *Id.* But after "the trial court noted that those counts could be supported by an argument that the gun was not real," the prosecution decided not to dismiss Counts 3 and 4. *Id.*

Also, before closing arguments, counsel for Petitioner again requested that the instructions for Counts 1 through 4 of aggravated robbery state that the "deadly weapon" was "the gun." *Id.* at *8. The prosecution objected to this request based on its prior email to Petitioner's counsel after the hearing on the motion for the bill of particulars, stating, "that it had 'clarified' to [Petitioner] in the email that it would move forward on the theory that [Petitioner] was 'armed with both a hammer and a gun when these crimes were committed' and that both defendants 'were aware of the numerous recorded statements of the victim/witnesses stating the same.'" *Id.* The trial court denied Petitioner's request for a clarifying instruction, expressed frustration that the parties did not resolve this issue earlier, and noted that both defendants were prejudiced by the timing of this issue. *Id.* The trial court also specifically noted that, under the applicable law, the prosecution did not have to elect whether it would rely on the hammer or the gun as the deadly weapon [Doc. 17-7 p. 27]. Even so, the trial court decided that it would only allow the prosecution to argue the gun

as the deadly weapon as to Counts 1 and 2 [*Id.* at 27–28].  Petitioner "then sought clarification as to whether the hammer would be included as an item stolen from Mr. Beasley, or whether it would be argued as 'the thing that is fashioned to look like a dangerous weapon,' relevant to Count 3 and 4."  *Id.*  The trial court responded "that it would let the State argue 'whatever they want[ed] to argue'" as to Counts 3 and 4.  *Id.*

Ultimately, the jury instructions for Counts 1 and 2 of aggravated robbery specified that the "deadly weapon" was "the gun" [Doc. 17-12, p. 89].  But for Counts 3 and 4 of aggravated burglary, the jury instructions more generally stated that, to find Petitioner guilty, the jury must find "that the defendant accomplished [the robbery] by display of any article fashioned to lead the alleged victim to reasonably believe it to be a deadly weapon" [*Id.*].

During their deliberations, the jury sent the judge the following question:

> As to element 6 [deadly weapon] under counts 1, 2, 3, and 4, as to counts 1 and 2, the defendant accomplished this act with a deadly weapon (the gun). Does the deadly weapon have to be a gun?  Could it be the hammer under counts 1 and 2?

*Id.* at *9.  The parties agreed that the judge should respond that "[t]he deadly weapon alleged in counts 1 and 2 is the gun, not the hammer."  *Id.*

The jury later sent a note stating as follows:

> As to counts 3 and 4, element 6 [the deadly weapon], the jury believes that the hammer that was referred to in the testimony constitutes a deadly weapon. The definition of deadly weapon on page 22 refers to anything manifestly designed, made, or adapted for the purpose of infl[i]cting death or serious bodily injury by the manner of its use.  As to counts 3 and 4, element 6, it's our assumption . . . that the hammer could be considered a deadly weapon in this case.

Before the trial court responded to this note, the jury returned with its verdict.  *Id.*

The jury then convicted Defendant Hartshaw of "two counts of the lesser-included offense of robbery (Counts 1 and 2; Class C felony)[] [and] two counts of aggravated robbery (Counts 3

9

and 4; Class B felony)." *Id.* At Petitioner's sentencing, the trial court merged all 4 of the aggravated robbery counts into Count 3. *Id.* at *10.

In ruling on Petitioner's claim challenging the jury instructions for Counts 3 and 4 in Petitioner's direct appeal of his convictions, the TCCA found that the jury instructions for Counts 3 and 4 did not violate Petitioner's right to a fair trial. *Id.* at *14. The TCCA found that Counts 1–4 charged Petitioner with one offense under Tennessee law, although under two theories of guilt, specifically "[]that the robbery was accomplished through the use of a gun [Counts 1 and 2] or through the use of an article which [the victim] believed to be a deadly weapon [Counts 3 and 4[]]," and the evidence was sufficient to convict Petitioner under either theory. *Id.* at *12–13, 14.

Petitioner has not shown that the TCCA's denial of his claim challenging the jury instructions for Counts 3 and 4 was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. A claim challenging "a defective jury instruction" does not entitle a habeas corpus petitioner to relief unless that jury instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Alston v. Genovese*, No. 20-5038, 2020 WL 3960581, at *2 (6th Cir. June 9, 2020) (quoting *Estelle*, 502 U.S. at 72).

In this case, Petitioner appears to assert that the jury instructions for Counts 3 and 4 violated his constitutional rights because he chose to testify with the understanding that a gun, not the hammer, was the only item that could lead the jury to convict him of aggravated robbery. But Petitioner has not alleged or pointed to any evidence in the record showing that his belief that the prosecution could only rely on the gun to support Counts 3 and 4 at the time that he chose to testify affected (1) his decision to testify or (2) the way he testified. So the Court cannot find that the apparent confusion regarding the relevant prosecution theory for this element of aggravated

10

robbery infected the trial as a whole, such that his aggravated robbery conviction violated his right to due process. This conclusion is bolstered by the fact that Petitioner does not set forth any facts or cite any cases suggesting that Tennessee law required the prosecution to elect whether they would rely on the gun or the hammer for Counts 3 and 4, such that the trial court should have instructed the jury that the only item that could support an aggravated robbery conviction under Counts 3 and 4 was the gun. The record also demonstrates that the trial court properly instructed the jury as to Counts 3 and 4 based on the language of the applicable statute. *Compare* Doc. 17-12 p. 89 *with* Tenn. Code Ann. § 39-13-402(a)(1).

In short, it appears that, while Petitioner's counsel chose not to address the issue of whether the prosecution would rely solely on the gun to support the aggravated robbery charges in Counts 1 through 4 before Petitioner testified despite having reason to do so, this choice only resulted in the trial court instructing the jury in a manner that favored Petitioner for Counts 1 and 2, rather than jury instructions for Counts 3 and 4 that were defective under Tennessee law in a manner that could rise to the level of a violation of Petitioner's constitutional rights.

Thus, Petitioner is not entitled to relief under § 2254 for this claim.

## II. CERTIFICATE OF APPEALABILITY

The Court now must consider whether to issue a certificate of appealability (COA), should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a district court should issue a COA only where the petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

11

correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As reasonable jurists would not debate the Court's ruling that Petitioner procedurally defaulted his first two claims and Petitioner has not made a substantial showing of a denial of a constitutional right in his third claim, a COA will not issue.

## V.      CONCLUSION

For the reasons set forth above:

1.  Respondent's motion to dismiss the petition [Doc. 18] is **GRANTED**;

2.  A COA will not issue;

3.  The Court **CERTIFIES** that any appeal in this matter would not be taken in good faith. Fed. R. App. P. 24(a); and

4.  This action will be **DISMISSED**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge

12